[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties herein were married on January 3, 1986 in Manchester, Connecticut. Both parties have resided in the State of Connecticut for at least 12 months next preceding the date of the filing of the complaint. There are no minor children issue of the marriage and the marriage of the parties has broken down irretrievably. The parties separated in January of 1991 so we have a relatively short term marriage, one that lasted approximately five (5) years.
At the time of the marriage the plaintiff was a school teacher in the Town of Glastonbury, Connecticut. While a teacher in Glastonbury accusations or charges were lodged against him by a female student and because he could not afford legal expenses to fight the allegations he resigned his job. Ultimately, he was cleared by the Board of Education in Glastonbury. Following his leaving Glastonbury, he found employment with Smith and Associates, a consulting firm, for which he was a subcontractor. This was from August 1991 thru September 1992 following the separation from his wife in 1990. It is interesting to note that during that period of time that he was in the consulting business he did make over $108,000.00 for the first year which is substantially more than he makes as a teacher. He is currently employed by CREC (Capitol Region Education Council). The plaintiff also submitted a letter indicating that he doesn't know whether he will have continued employment with CREC beyond June 30 of this year.
The plaintiff's financial affidavit indicates an income of $1,052.00 a week but there was no explanation as to whether this was for the 52 weeks of the year or for the 40 weeks of the teaching year and that would be his weekly pay for just 40 weeks. At least there was no testimony elicited to explain this CT Page 5514 to the court so the plaintiff's income is more likely the $40,000.00 plus figure rather than a $52,000.00 plus figure, based upon the past 13 weeks being used as the method for attaining the weekly income of the party.
The defendant has been employed by the Hartford Insurance Group (ITT) and has been so employed for a long number of years. Her financial affidavit indicates a weekly income of $911.00 per week plus an income from rental property and child support for a minor child of a previous marriage. Though she had two children, evidently the older boy is no longer under a support order having attained his majority. After expenses, her net weekly income from other sources is reduced to $142.09, for a total weekly income of $1,053.00.
At the time of the marriage, the defendant wife did own a two family piece of property on Severs Street, Manchester, Connecticut. She occupied one unit and received rental income from the other unit.
The financial aspect of this marriage is kind of difficult to work through. The defendant wife was evidentially a saver and a very meticulous person in keeping account of her income and expenditures, working under a strict budget. The plaintiff on the other hand was sort of loose and carefree about the ways they spent their money. As a result of their marriage, they purchased a home on Wildwood Road in Manchester, Connecticut and financed it with a mortgage of $110,400.00 and approximately $43,000.00 plus in cash. The defendant borrowed $10,000.00 from her parents, the plaintiff borrowed $8,000.00 from his parents and further borrowed $8,000.00 from his credit union for a total of $16,000.00; which leaves a balance of approximately $17,000.00 that was otherwise supplied by the defendant. There is nothing else indicated as to where that money came from. There had been a $13,000.00 down payment and seemingly a $5,000.00 deposit but there was no evidence as to where that money came from, so it is presumed by the court that all of these funds, approximately $17,000.00, came from the defendant. The $8,000.00 lent by the plaintiff's mother was repaid shortly after the closing and the $8,000.00 the plaintiff borrowed from the credit union was eventually incorporated into another borrowing that resulted in a second mortgage being placed on the premises. There is a further discrepancy in that the defendant indicates that there are currently $123,000.00 in first and second mortgages outstanding against the property whereas the CT Page 5515 plaintiff claims only $112,555.00 broken down as $82,275.00 on the first mortgage and $30,280.00 on the second mortgage. The court is a little bit mystified by the difference. Unless the first mortgage is a short term mortgage it wouldn't seem that a mortgage of $110,000.00 would be paid down to $82,000.00 as rapidly as this one. While the parties lived together, the plaintiff did pay the first and second mortgage which evidentally consumed most of his net pay and the defendant paid all other household expenses. The monthly payments in early 1990 on the first mortgage were approximately $1,500.00 per month and in April decreased to $1,353.00 per month and in October of 1990 increased to $1,371.00 per month. The second mortgage payments are consistently $549.11 per month. The plaintiff has continued, since the time of separation, to pay on the second mortgage. The plaintiff since January of 1991 has been paying on the first mortgage and has made some $1,013.17 contributions towards the second mortgage, the plaintiff being under a $500.00 order on the second mortgage. The property is currently appraised at $172,000.00. Using the $123,400.00 figure as incumbrances on said property the equity is currently in the vicinity of $49,000.00. Since the equity in the house at the time of purchase was approximately $33,600.00 the actual growth in equity is $9,400.00. The plaintiff's contribution to the initial of $33,600.00 was $16,000.00 of which $8,000.00 was from his parents. That $8,000.00 has been repaid and the defendant should receive credit for at least half the payment that was made during the course of the marriage, which means that the plaintiff's portion of the equity was reduced to $12,000.00 and therefore represented 36% of the original equity. On that basis, his interest in the growth in the equity will be 36% or $15,400.00 or $5,544.00.
The Servers Street property was entirely in the name of the defendant at the time of the marriage and during the course of the marriage she put the property into a trust for the benefit of her two children. The defendant has really no claim of any sort against any interest in that property even if there has been an appreciation in value during the course of the marriage. There was testimony that the property today is worth approximately the same as it was at the time of the marriage because of an increasing market to 1989-1990, and then a decreasing market in real estate. The parties did purchase a time share in Carlsbad, California during the course of their marriage and that property will be ordered sold and any proceeds will be split equally between the two parties. The time share CT Page 5516 in the Pocono's was owned exclusively by the plaintiff at the time of entering into the marriage and should remain his exclusively after the dissolution of the marriage. Both parties have retirements of one sort or another. The plaintiff has a retirement with the State Board of Education, currently at $27,500.00. The accretion to that account during the course of the marriage was $14,431.90. The defendant also has an retirement account, a 401K Plan and IRA's with a marital growth of $70,717.00.
Each party should keep their own banking accounts, both checking or savings. Most of the defendant's accounts are trust accounts for her children. Both parties should retain their own insurance policies, though they are somewhat different in amount, they are basically even. The plaintiff should keep the sail boat and trailer, the motor boat and trailer, camper and trailer which seem to have a total value of approximately $650.00, since the motor boat and trailer is one half his brother's. The major area of discrepancy between the parties are the growth of their assets during the time of marriage. These are is in the retirement fund of the plaintiff and his annuity fund. The growth during the marriage was approximately $17,000.00, the growth in the defendant's pension fund, 401K, and her IRA are in the amount of $70,000.00 meaning a total growth during the course of the marriage of these particular assets being $87,763.00.
The cause of the breakdown in the marriage seemed to be the result of a couple of things. One, a strained relationship between the defendant's children of her first marriage and the plaintiff, and also an incident where a picture was discovered of the plaintiff with a nude woman taken in Las Vegas. It is not clear from the testimony whether the plaintiff was also nude in the picture but at least one of the parties was. This resulted in the defendant becoming disillusioned with the marriage though the plaintiff's claim is that the picture was taken prior to his marrying the defendant. There is no real proof as to when this occurred. Basically, it seems that the plaintiff was more at fault in the breakdown in this particular marriage than the defendant.
Accordingly, the court in allocating fault will find that the plaintiff was much more at fault than the defendant and applying the statutory requirements would give the plaintiff 30% of $87,763.00 or $27,328.90. Since he already received CT Page 5517 $17,046.21 as the growth in his share of the marital assets, the defendant would owe the plaintiff $10,282.79. This in addition to the amount of his growth in the equity in the house would give him a total of $15,826.79.
The defendant has the option of selling the marital home and paying the plaintiff the $15,826.79 out of the net proceeds of the sale. In the alternative, the defendant may execute a promissory note, secured by a mortgage, in the amount of $15,826.79 at 5% per annum, simple interest. The note would become payable either upon the sale of the house, the defendant's remarriage, or 7 years from the date of dissolution, or if the defendant no longer resides in the marital home.
There was also some personal property that the plaintiff desired and which the court is giving to the plaintiff. A double Sun painting, a TV and TV stand, Chatham Lighthouse painting, one VCR, four place settings of the Thistleware pottery set, and one-half of the serving pieces in the same Thistleware pottery set, a camcorder and a black and white mini television. The court, because this was a short term marriage, will not award alimony to either party.
Accordingly, the court will enter an order dissolving the marriage of the parties and enter orders in accordance with this Memorandum of Decision.
Kline, State Trial Referee